UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JASON ANDERSON,

        Plaintiff,

        v.        Case No. 20-C-1828

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION

Plaintiff Jason Anderson filed this action for judicial review of a decision by the Commissioner of Social Security denying his applications for disability and disability insurance benefits under Title II of the Social Security Act. Anderson contends that the decision of the administrative law judge (ALJ) is flawed and requires remand. For the reasons that follow, the Commissioner's decision will be reversed and remanded for further proceedings.

## BACKGROUND

On May 25, 2017, Anderson filed an application for a period of disability and disability insurance benefits, alleging disability beginning on December 23, 2016. Anderson listed chronic adjustment disorder, anxiety, depression, insomnia, lumbrosacral spine strain, and right hip strain as the conditions that limited his ability to work. R. 273. His application was denied initially and on reconsideration. Following an administrative hearing, ALJ Brent Bedwell issued a decision on October 12, 2018, finding that Anderson was not under a disability from December 23, 2016, through the date of the decision. R. 13–21. Anderson subsequently filed a complaint in the United States District Court for the Eastern District of Wisconsin seeking judicial review of the ALJ's decision. The matter was reversed and remanded for further proceedings on October 24, 2019.

R. 2520; see also *Anderson v. Saul*, No. 19-C-457 (E.D. Wis.). ALJ Bedwell held a second administrative hearing on February 19, 2020. R. 2436–84. Anderson, who was represented by counsel, and a vocational expert (VE) testified. The ALJ noted that Anderson filed a subsequent claim for Title II disability benefits on May 21, 2019, alleging disability beginning February 1, 2017. R. 2702. The ALJ concluded that the subsequent claim was duplicative of the first and consolidated the claims files. R. 2413.

At the time of the hearing, Anderson was 46 years old and had 50/50 custody of his three children. R. 32, 2443. He testified that he completed high school and obtained his associates degree in applied sciences and logistics. *Id.* Anderson was a marine who was honorably discharged in May 1993 for injury. R. 30. From 2004 to 2015, Anderson worked as a freight consolidation specialist. R. 33. In 2019, Anderson attempted to work in auto part delivery and medical transport positions. R. 2449–50. Anderson stated that the physical demands of delivering auto parts were "just too much" and that he was not functioning well with his coworkers. R. 2450. With respect to the medical transport position, Anderson stated that "the company owner just seemed like he didn't have his stuff together" and that Anderson had a "big difference of opinion" on how things were being run, such that he could not continue working there any longer. *Id.* He also noted that he had some difficulty remembering and carrying out instructions in both jobs and missed roughly five days of work per month. R. 2460, 2465.

Anderson indicated that his anxiety and post-traumatic stress disorder were the conditions that led him to file a Title II application and that he was struggling with his mental health. R. 2443–44. Anderson testified that, although he was holding things together enough to be involved with his children, he had been experiencing anxiety and panic attacks that were causing him to miss some of his children's activities. R. 2444. Anderson noted that his anxiety and panic attacks occur two times per day to two times per week, depending on the activity and what else goes on during

the week. R. 2458. He testified that his triggers include hearing doors open, people standing behind him, and loud bangs, among other things. R. 2452. Anderson acknowledged that he was undergoing counseling, but all he had gotten out of it were "things that [he] went and researched on [his] own on the internet." R. 2446. In terms of his physical condition, Anderson testified that he struggled with lower back pain and that his primary care providers informed him that a hip replacement "isn't out of the question." R. 2448–49.

In an eighteen-page decision dated March 12, 2020, the ALJ concluded that Anderson was not disabled. R. 2412–29. Following the Social Security Administration's (SSA) sequential evaluation process, the ALJ found that Anderson met the insured status requirements of the Social Security Act through December 31, 2021, and had not engaged in substantial gainful activity since December 23, 2016. R. 2415. Next, the ALJ determined that Anderson had the following severe impairments: post-traumatic stress disorder, generalized anxiety disorder, and obesity. *Id.* The ALJ found that Anderson did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 2416.

After reviewing the record, the ALJ determined that Anderson had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c) but with the following limitations:

> [T]he claimant is unable to climb ladders, ropes and scaffolds; and is limited to occasional climbing of ramps or stairs. He can perform unskilled work and jobs that involve simple and routine tasks and instructions. He can maintain attention and concentration for two-hour segments. He can perform jobs having occasional decision-making and workplace changes. He can have occasional interaction with coworkers and supervisors, but no interaction with the public.

R. 2419. The ALJ found that Anderson was unable to perform any past relevant work. R. 2426–27. Considering Anderson's age, education, work experience, and RFC, the ALJ concluded that Anderson was capable of performing jobs existing in significant numbers in the national economy,

3

including sorter and packer. R. 2427–28. Based on these findings, the ALJ determined that Anderson was not under a disability from December 23, 2016, through the date of the decision. R. 2429. The Appeals Council denied Anderson's request for review of the ALJ's decision, making that decision the final decision of the Commissioner. R. 1.

## LEGAL STANDARD

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to his conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the SSA's rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936,

941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**ANALYSIS**

Anderson asserts that the ALJ erred when he ignored a March 31, 2017, medical evaluation conducted by Dr. Andrea Labine of the Department of Veterans Affairs (VA). Dr. Labine's evaluation was conducted in the context of a "Disability Benefits Questionnaire," in connection with Anderson's application for VA disability benefits. R. 1568–74. Dr. Labine noted that Anderson's symptoms of depression and anxiety have increased in intensity and frequency as his functioning has deteriorated and that he meets the criteria for both persistent depressive disorder and panic disorder. R. 1574. She checked boxes indicating that Anderson had depressed mood; anxiety; suspiciousness; panic attacks more than once a week; chronic sleep impairment; impairment of short- or long-term memory; circumstantial, circumlocutory or stereotyped speech; difficulty in understanding complex commands; impaired judgment; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or a work-like setting; suicidal ideation; obsessional rituals which interfere with routine activities; and impaired impulse control, such as unprovoked irritability with periods of violence. R. 1572. Dr. Labine stated that Anderson had occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, and/or mood. R. 1570.

The ALJ indicated that he had "taken note" that the Department of Veterans Affairs had purportedly assigned Anderson a 100 percent "unemployability rating" effective February 16, 2017. R. 2422. He explained that, because the disability determination processes utilized by the Department of Veterans Affairs and the Social Security Administration are fundamentally different, a disability rating by the Department of Veterans Affairs is neither inherently valuable

5

nor persuasive. R. 2422–23. The ALJ did not, however, discuss Dr. Labine's March 31, 2017, evaluation.

Although an ALJ is not required to mention every piece of evidence in the record, he cannot ignore entire lines of evidence related to a claimant's condition or impairment. *See Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016); *see also Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("[A]lthough an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." (citation omitted)). The ALJ's decision does not discuss the evidence underlying the VA's disability benefits decision in assessing the nature and extent of Anderson's medical impairments. The ALJ's failure to discuss this evidence and to build an accurate and logical bridge from the evidence to his conclusions warrants remand in this case. *See Clifford*, 227 F.3d at 872.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four). Although the decision is reversed because of the error in failing to discuss Dr. Labine's March 31, 2017, evaluation, the Commissioner should also address Anderson's other claims of error. Further consideration of Anderson's claimed errors on remand will aid in reaching the final resolution of the case and avoid further remands in the future. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 25th day of August, 2022.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge